# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | | |
|---|---|---|
| PROGRESSIVE NORTHERN INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | No. 2:20-cv-3068-DCN |
| vs. | ) ) | **ORDER** |
| DONALD LADUE, *as Personal Representative of the Estate of Jeremy Ladue*, and ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY, | ) ) ) ) ) | |
| Defendants. | ) ) | |

This matter is before the court on defendant Donald Ladue's motion to dismiss or stay proceedings, ECF No. 10. For the reasons set forth below, the court denies the motion.

## I. BACKGROUND

This declaratory judgment action arises out of an insurance dispute between two insurance companies and their insureds following the death of Jeremy Ladue. Jeremy Ladue was a deputy for the Charleston County Sherriff's Department. In the early morning of April 13, 2020, Jeremy Ladue, while on patrol in an agency-issued vehicle, was involved in a high-speed car accident on Savannah Highway in Charleston County and died as a result of his injuries. At the time of the accident, Jeremy Ladue held an insurance policy (the "Progressive Policy") with plaintiff Progressive Northern Insurance Company ("Progressive"), which provided underinsured motorist ("UIM") bodily injury coverage with a limit of $100,000 and UIM property damage coverage also with a limit of $100,000. Together, the Progressive Policy provided $200,000 in UIM coverage. At

1

the same time, Donald and Regina Ladue, Jeremy Ladue's parents, held an insurance policy (the "Allstate Policy") with defendant Allstate Fire and Casualty Insurance Company ("Allstate"), which also provided UIM bodily injury coverage with a limit of $100,000 and UIM property damage coverage with a limit of $100,000, for a total of $200,000 in UIM coverage. The parties agree that Jeremy Ladue, as a resident relative of his parents, qualified as an insured under the Allstate Policy at the time of the accident.

In a provision titled "Other Insurance", the Progressive Policy states that where "there is other applicable [UIM] coverage," Progressive will only pay Progressive's share of the damages, which the Policy defines as the proportion that Progressive's "limit of liability bears to the total of all available coverage limits." (the "UIM Other Insurance Provision"). ECF No. 1-1 at 21. According to Allstate, the Allstate Policy contains a provision nearly identical to the UIM Other Insurance Provision. See ECF No. 6, Answer ¶ 26.

After the April 13, 2020 accident, the Estate of Jeremy Ladue (the "Estate") made a claim under the Progressive Policy for UIM coverage. On the basis of the UIM Other Insurance Provision, Progressive denied that the Estate was entitled to the full amount of UIM coverage available under the Progressive Policy and tendered a payment of $100,000, half of the Progressive Policy's $200,000 UIM limit. The Estate made a similar claim under the Allstate Policy for UIM coverage, and Allstate similarly denied that full coverage was available and tendered a payment of $100,000, half of the Allstate Policy's $200,000 UIM limit. According to Progressive's complaint, the Estate "seeks to recover the UIM policy limits under the Allstate Policy and the Progressive Policy." ECF No. 1, Compl. ¶ 18.

On August 26, 2020, Progressive filed this action against Donald Ladue ("Ladue"), in his capacity as representative of the Estate, and Allstate, seeking two declaratory judgments. First, Progressive requests a declaration that

> Jeremy Ladue has already recovered the maximum amount of UIM coverage to which he is entitled as a result of the April 13, 2020 accident and he is not entitled to recover any additional amounts of UIM coverage as a result of the accident.

Compl., ¶ 26. Second, Progressive requests a declaration that

> [Progressive's] proportionate share of the maximum amount of UIM coverage [the] Estate is entitled to recover as a result of the accident is one-third [ ] of $100,000 in UIM bodily injury coverage and $100,000 in UIM property damage coverage – i.e. $33,333.33 in UIM bodily injury coverage and $33,333.33 in UIM property damage coverage.

On September 23, 2020, Allstate answered the complaint and asserted a crossclaim against Ladue as well as a counterclaim against Progressive. In its crossclaim, Allstate seeks a declaration that "Jeremy Ladue cannot stack UIM coverages [and] is limited to a maximum UIM recovery of" $100,000 in UIM bodily injury coverage and $100,000 in UIM property damage coverage. ECF No. 6 ¶ 42. In its counterclaim, Allstate seeks a second declaration that

> its pro-rata share of the available UIM limit Jeremy Ladue's Estate is entitled to recover as a result of one-half [ ] of $100,000 in UIM bodily injury coverage and $100,000 in UIM property damage coverage – i.e. $50,000 in UIM bodily injury coverage and $50,000 in UIM property damage coverage.

Id. ¶ 51. On October 23, 2020, Ladue also answered Progressive and Allstate's claims and filed a counterclaim against Progressive, which seeks a declaration that the Estate is entitled to the full amount of UIM coverage available under each policy, for a total of $400,000. ECF No. 11 at ¶ 63.

On October 23, 2020, Ladue filed a motion to dismiss or, in the alternative, to stay the case pending resolution of a case currently pending before the South Carolina Court of Appeals.  ECF No. 10.  On November 5, 2020, Progressive filed a response in opposition.  ECF No. 15.  The following day, Allstate also responded in opposition, adopting Progressive's response in full.  ECF No. 16.  On November 10, 2020, Ladue replied.  ECF No. 17.  The court held a hearing on the matter on December 8, 2020.  As such, this matter has been fully briefed and is ripe for the court's review.

## II.  STANDARD

The Declaratory Judgment Act states that

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201.  Acknowledging Article III's circumscription of federal jurisdiction to "cases and controversies," the Declaratory Judgment Act limits its application to "case[s] of actual controversy," meaning that it "is operative only in respect to controversies which are such in the constitutional sense."  Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 240 (1937); see also Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc., 386 F.3d 581, 592 (4th Cir. 2004) ("A case meets the actual controversy requirement only if it presents a controversy that qualifies as an actual controversy under Article III of the Constitution.").  A declaratory judgment action presents a justiciable controversy where "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007).

Even where a declaratory judgment action presents a justiciable controversy, the court's exercise of jurisdiction over the action is discretionary. See Wilton v. Seven Falls Co., 515 U.S. 277, 289–90 (1995); see also Trustgard Ins. Co. v. Collins, 942 F.3d 195, 201 (4th Cir. 2019) ("[The Declaratory Judgment] Act gives federal courts discretion to decide whether to declare the rights of litigants."). Such discretion, however, "is not unbounded," and a district court may refuse to entertain a declaratory judgment action only "for good reason." Nautilus Ins. Co. v. Winchester Homes, Inc., 15 F.3d 371, 375 (4th Cir. 1994) (quoting Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d 321, 324 (4th Cir. 1937)) (internal quotation marks omitted). The Fourth Circuit calls for "liberal[ ] contru[ction]" of the Declaratory Judgement Act to fulfil "the purpose intended, i.e., to afford a speedy and inexpensive method of adjudicating legal disputes[ ], and to settle legal rights and remove uncertainty and insecurity from legal relationships without awaiting a violation of the rights or a disturbance of the relationships." Id. A court should generally exercise jurisdiction over a declaratory judgment claim "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Quarles, 92 F.2d at 325.

### III.   DISCUSSION

Ladue requests that the court decline to assert jurisdiction over the instant declaratory judgment action because the action's claims depend upon an allegedly unsettled question of state law, which, Ladue contends, is currently pending before the South Carolina Court of Appeals in an unrelated case, Cox v. State Farm Mutual

5

Automobile Insurance Co., No. 2018CP2200869.  In support of his contention, Ladue relies on the factors the Fourth Circuit espoused in Nautilus, 15 F.3d at 375.

In determining whether to exercise jurisdiction over a federal declaratory judgment claim during the pendency of a parallel state court action, the Fourth Circuit instructs district courts to consider four factors:

> (1) whether the state has a strong interest in having the issues decided in its courts; (2) whether the state court could resolve the issues more efficiently than the federal court; (3) whether the presence of overlapping issues of fact or law might create unnecessary entanglement between the state and federal court; and (4) whether the federal action is mere procedural fencing in the sense that the action is merely the product of forum shopping.

Great Am. Ins. Co. v. Gross, 468 F.3d 199, 211 (4th Cir. 2006) (citing Nautilus, 15 F.3d at 377).  "The Nautilus factors are not a 'mechanical checklist,' and a district court 'should apply them flexibly in light of the particular circumstances of each case.'" Walker v. Liberty Mut. Ins. Co., 2018 WL 573159, at *4 (D.S.C. Jan. 26, 2018) (quoting VRCompliance LLC v. HomeAway, Inc., 715 F.3d 570, 573 (4th Cir. 2013)).

As Progressive points out, there is one glaring problem with Ladue's Nautilus argument—there is no true parallel state court proceeding underlying this action.  The law is clear that the Nautilus factors should be applied "when a parallel state court action is pending[.]"  Gross, 468 F.3d at 211.  Nevertheless, the court finds the Nautilus factors instructive here for two reasons.  First, the principles undergirding the Nautilus factors, "federalism, efficiency and comity," apply with significant force because this action implicates a question of state law, which Ladue contends is on the verge of state-court resolution in Cox.  Nautilus, 15 F.3d at 376.  And relatedly, although there is no proceeding in state court that parallels the instant suit factually, Ladue asserts that Cox is legally parallel, meaning that the issue of state law implicated in that case is the same

6

issue this court must eventually resolve in this case. Accordingly, cognizant that courts are to apply Nautilus "flexibly", the court considers the factors for instructive value rather than as binding authority.

The most contentious dispute between the parties, and the one that lies at the heart of this motion, resides within the first Nautilus factor—South Carolina's interest in resolving the implicated state-law issue. The Nautilus court noted that a state's interest in resolving a state law claim is particularly strong where "the questions of state law involved are difficult, complex, or unsettled." Id. at 378 (4th Cir. 1994). Before determining whether the state-law issue involved in this case is difficult, complex, or unsettled, the court must determine what that state-law issue is in the first place. Therein lies the parties' dispute. Progressive argues that the issue implicated by its declaratory judgment claim is whether Ladue can "stack" UIM coverage limits from different policies to recover from both policies in excess of one policy's coverage limit. Ladue argues that the determinative issue in this action is whether an insurer can restrict the "portability" of UIM coverage, which means the insured's ability to apply UIM coverage to an accident that involves an uninsured vehicle. As such, the court must determine whether the determinative issue in this action is one of portability or stacking. For the reasons discussed below, the court agrees with Progressive that the issue in this action is a stacking issue, not a portability issue.

"Stacking is defined as the insured's recovery of damages under more than one policy until all of his damages are satisfied or the limits of all available policies are met." Giles v. Whitaker, 376 S.E.2d 278, 279 (S.C. 1989). In South Carolina, the law is clear that where "none of the insured's [ ] vehicles is involved in the accident, coverage is

7

available only to the extent of coverage on any one of the vehicles with the [ ] underinsured coverage." S.C. Code Ann. § 38-77-160.  To put it in layman's terms, an insured who does not have a vehicle involved in an accident cannot stack UIM coverages to recover in excess of the limit of any one policy he holds.  Brown v. Cont'l Ins. Co., 434 S.E.2d 270, 272 (1993) ("We find the plain and obvious meaning of § 38–77–160 prohibits stacking where none of the insured vehicles is involved.").  Progressive argues that this action implicates a stacking issue because the Estate is attempting to recover under separate UIM coverages from two different policies—the Progressive and Allstate Policies—in excess of each policy's individual UIM limit.  As the court discussed above, the Estate is attempting to recover $400,000 in total, and each policy limits UIM coverage to $200,000.

Portability, on the other hand, concerns whether certain insurance coverage follows the insured or the insured's vehicle.  Nakatsu v. Encompass Indem. Co., 700 S.E.2d 283, 288 (S.C Ct. App. 2010) ("[P]ortability refers to a person's ability to use his coverage on a vehicle not involved in an accident as a basis for recovery of damages sustained in the accident.").  If coverage follows the person, it is portable.  If coverage stays with the vehicle, it is not.  In South Carolina, there is no doubt that "U[I]M coverage is personal and portable, meaning coverage follows the person." Nationwide Mut. Ins. Co. v. Smith, 654 S.E.2d 837, 842 (S.C. Ct. App. 2007) (citing Nationwide Mut. Ins. Co. v. Erwood, 644 S.E.2d 62 (S.C. 2007)).

The disputed issue at the heart of Progressive's declaratory judgment claim is clearly one of stacking, not portability.  At the hearing on the motion, Ladue argued that this action implicates portability because the issue is whether the Estate can recover

simultaneously from separate, portable UIM coverages. But recovering from separate UIM coverages falls exactly within the definition of stacking, regardless of whether the stacked coverages are portable or not. In other words, portability is not a bar to the Estate's recovery here. Given that the accident did not involve a covered vehicle, the UIM coverage in both the Allstate and Progressive Policies must be portable for the Estate to recover at all. Indeed, Progressive and Allstate agree that the UIM coverage in each policy is portable and applies to the Estate's claims.

As such, the potential limitation on the Estate's ability to recover has nothing to do with portability. Instead, Progressive and Allstate argue that the Estate cannot recover in excess of what it has already recovered because the Estate cannot "stack" the separate UIM coverages to recover more than $200,000, the UIM coverage limit under each policy. The Estate seeks to recover $200,000 from each policy, meaning that it seeks an aggregate amount in excess of the coverage limit of any one policy. As such, the Estate is attempting to recover "damages under more than one policy until all of [its] damages are satisfied or the limits of all available policies are met." Giles, 376 S.E.2d at 279. Therefore, the Estate is attempting to stack coverages. As discussed above, South Carolina law on stacking UIM coverages is well settled. Thus, the declaratory judgement action implicates an area of state law that is neither unsettled nor in flux, meaning the first Nautilus factor weighs in favor of the court exercising jurisdiction.

Because there is no parallel proceeding in state court, Ladue concedes that the remaining Nautilus factors do not apply to the instant action. See ECF No. 10-1 at 7 ("The remaining factors to consider involve cases where a parallel action is pending in state court. In the instant action, there is no underlying action pending in state court[.]").

9

The court agrees that the remaining <u>Nautilus</u> factors do not give the court any reason to decline jurisdiction over this action.  Moreover, the fact that the merits of an action depend exclusively upon state law "alone provides no reason for declining to exercise federal jurisdiction."  <u>Nautilus</u>, 15 F3d at 378.  With no basis for declining jurisdiction, the court falls back on the age-old directive to exercise jurisdiction where, as here, a declaratory judgment action will "serve a useful purpose in clarifying and settling the legal relations in issue" and "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."  <u>Quarles</u>, 92 F.2d at 325.  For these reasons, the court denies the motion to dismiss.

Additionally, Ladue has offered no valid grounds for his request to stay the matter pending the South Carolina Court of Appeals's resolution of <u>Cox</u>.  Although he cites to a single case in support of the request, <u>Bituminous Cas. Corp. v. R.C. Altman Builders, Inc.</u>, that case is unpersuasive, as the court there did in fact exercise federal jurisdiction over claims governed by state law.  2006 WL 2137233, at *1 (D.S.C. July 28, 2006).  In <u>Bituminous</u>, the court, faced with a federal declaratory judgment claim, resolved to exercise jurisdiction and interpret South Carolina state insurance law, declaring at the outset, "Abandon hope, all ye who enter here."  <u>Id.</u>[1]  As there, the court must similarly relinquish all hope and again "march[ ] through the gates."  <u>Id.</u> at *6 n.1

---

[1] Eventually, the Fourth Circuit reversed the court's decision in <u>Bituminous</u> when the unsettled South Carolina law the court resolved to construe was settled by the South Carolina Supreme Court.  That problem does not exist here, as the court has already determined that South Carolina law on the relevant issue is settled.

### III. CONCLUSION

For the foregoing reasons the court **DENIES** the motion to dismiss or stay proceedings.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**December 9, 2020**
**Charleston, South Carolina**

11