IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| PROGRESSIVE NORTHERN INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | No. 2:20-cv-3068-DCN |
| vs. | ) ) | **ORDER** |
| DONALD LADUE, *as Personal Representative of the Estate of Jeremy Ladue*, and ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

This matter comes before the court on plaintiff Progressive Northern Insurance Company's ("Progressive") motion for judgment on the pleadings, ECF No. 32. For the reasons set forth below, the court denies the motion.

## I. BACKGROUND

This declaratory judgment action arises out of an insurance dispute between two insurance companies and their insureds following the death of Jeremy Ladue ("Ladue"). Ladue was a deputy for the Charleston County Sherriff's Department. In the early morning of April 13, 2020, Ladue, while on patrol in an agency-issued vehicle, was involved in a high-speed car accident on Savannah Highway in Charleston County and died as a result of his injuries. At the time of the accident, Ladue held an insurance policy (the "Progressive Policy") with Progressive, which provided underinsured motorist ("UIM") bodily injury coverage with a limit of $100,000 and UIM property damage coverage also with a limit of $100,000. Together, the Progressive Policy provided $200,000 in UIM coverage. At the same time, Donald and Regina Ladue, Ladue's

1

parents, held an insurance policy (the "Allstate Policy") with defendant Allstate Fire and Casualty Company's ("Allstate"), which also provided UIM bodily injury coverage with a limit of $100,000 and UIM property damage coverage with a limit of $100,000, for a total of $200,000 in UIM coverage.

The parties agree that Ladue, as a "resident relative" of his parents, qualified as an insured under the Allstate Policy at the time of the accident. In a provision titled "Other Insurance," the Progressive Policy states that where "there is other applicable [UIM] coverage," Progressive will only pay Progressive's share of the damages, which the Policy defines as the proportion that Progressive's "limit of liability bears to the total of all available coverage limits" (the "Progressive UIM Other Insurance Provision"). ECF No. 1-1 at 21. The Allstate Policy contains a similar provision, which states:

> If more than one policy applies to the accident on a primary basis, the total benefits payable will not exceed the amount the insured person is legally entitled to recover. We will bear our proportionate share with other underinsured motorist benefits.

ECF No. 32-2 at 41 (the "Allstate UIM Other Insurance Provision").

After the April 13, 2020 accident, the Estate of Jeremy Ladue (the "Estate") made a claim under the Progressive Policy for UIM coverage. On the basis of the Progressive UIM Other Insurance Provision, Progressive denied that the Estate was entitled to the full amount of UIM coverage available under the Progressive Policy and tendered a payment of $100,000, half of the Progressive Policy's $200,000 UIM limit. The Estate made a similar claim under the Allstate Policy for UIM coverage, and Allstate similarly denied that full coverage was available based on the Allstate UIM Other Insurance Provision and tendered a payment of $100,000, half of the Allstate Policy's $200,000 UIM limit.

On August 26, 2020, Progressive filed this action against Donald Ladue, in his capacity as representative of the Estate, and Allstate, seeking two declaratory judgments. ECF No. 1, Compl. First, Progressive requests a declaration that

> Jeremy Ladue has already recovered the maximum amount of UIM coverage to which he is entitled as a result of the April 13, 2020 accident and he is not entitled to recover any additional amounts of UIM coverage as a result of the accident.

Id. ¶ 26. Second, Progressive requests a declaration that

> [Progressive's] proportionate share of the maximum amount of UIM coverage [the] Estate is entitled to recover as a result of the accident is one-third [ ] of $100,000 in UIM bodily injury coverage and $100,000 in UIM property damage coverage – i.e. $33,333.33 in UIM bodily injury coverage and $33,333.33 in UIM property damage coverage.

Id. ¶ 33.

On September 23, 2020, Allstate answered the complaint and asserted a crossclaim against the Estate as well as a counterclaim against Progressive. In its crossclaim, Allstate seeks a declaration that "Jeremy Ladue cannot stack UIM coverages [and] is limited to a maximum UIM recovery of" $100,000 in UIM bodily injury coverage and $100,000 in UIM property damage coverage. ECF No. 6 ¶ 42. In its counterclaim, Allstate seeks a second declaration that

> its pro-rata share of the available UIM limit Jeremy Ladue's Estate is entitled to recover as a result of one-half [ ] of $100,000 in UIM bodily injury coverage and $100,000 in UIM property damage coverage – i.e. $50,000 in UIM bodily injury coverage and $50,000 in UIM property damage coverage. [sic]

Id. ¶ 51. On October 23, 2020, the Estate also answered Progressive and Allstate's claims and filed a counterclaim against Progressive, which seeks a declaration that the Estate is entitled to the full amount of UIM coverage available under each policy, for a total of $400,000. ECF No. 11, Answer ¶ 63.

On November 23, 2020 and December 3, 2020, Progressive and Allstate respectively filed motions for judgment on the pleadings concerning their claim that the Estate is not entitled to additional coverage under their policies. ECF Nos. 20, 23. On May 19, 2021, the court filed an order resolving that dispute, holding that "Ladue has received the full amount to which the law and the Progressive and Allstate Policies entitle him," a total of $200,000. ECF No. 36 at 7 ("the May 19 Order"). The dispute between Progressive and Allstate concerning how that $200,000 obligation must be divvied up remains. On February 15, 2021, Progressive filed a motion for judgement on the pleadings with respect to its declaratory judgment claim against Allstate. ECF No. 32. On March 1, 2021, Allstate responded to the motion. ECF No. 34.[1] On March 8, 2021, Progressive filed a reply. ECF No. 35. Accordingly, the motion is ripe for review.

## II. STANDARD

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." Courts follow "a fairly restrictive standard" in ruling on Rule 12(c) motions, as "hasty or imprudent use of this summary procedure by the courts violates the policy in favor of ensuring to each litigant a full and fair hearing on the merits of his or her claim or defense." 5C Wright & Miller, Federal Practice and Procedure § 1368 (3d ed. 2011). Therefore, "a Rule 12(c) motion for judgment on the pleadings is decided under the same

---

[1] On February 26, 2021, the Estate also filed a response to Progressive's motion, stating, "if the Court were to rule against Ladue on the first requested declaration, Ladue would take no position on [Progressive]'s Partial Motion for Judgement on the Pleadings." ECF No. 33 at 1. Because the court found in favor of the insurance companies on Progressive's first declaratory judgment claim, it does not consider the Estate's response with respect to the second.

4

standard as a motion to dismiss under Rule 12(b)(6)." Deutsche Bank Nat'l Trust Co. v. I.R.S., 361 F. App'x 527, 529 (4th Cir. 2010); see also Massey v. Ojaniit, 759 F.3d 343, 353 (4th Cir. 2014) ("[W]e are mindful that a Rule 12(c) motion tests only the sufficiency of the complaint and does not resolve the merits of the plaintiff's claims or any disputes of fact."). Although they share a standard, a motion for judgment on the pleadings differs from a motion to dismiss in that the former allows the court to consider matters outside of the complaint, where the latter generally does not. In resolving a motion for judgment on the pleadings, the court may consider the pleadings and exhibits attached thereto, relevant facts obtained from the public record, and exhibits to the motion that are "integral to the complaint and authentic." Massey, 759 F.3d at 347.

When considering a Rule 12(c) motion for judgment on the pleadings, the court must accept the plaintiff's factual allegations as true and draw all reasonable inferences in the plaintiff's favor. E.I. du Pont de Nemours & Co. v. Kolon Indus., 637 F.3d 435, 440 (4th Cir. 2011); see also BET Plant Servs., Inc. v. W.D. Robinson Elec. Co., 941 F. Supp. 54, 55 (D.S.C. 1996) ("[A] defendant may not prevail on a motion for judgment on the pleadings if there are pleadings that, if proved, would permit recovery for the plaintiff."). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). On a motion for judgment on the pleadings, the court's task is limited to determining whether the complaint states a "plausible claim for relief." Id. at 679. Although Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," "a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Instead, the

"complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).

### III.  DISCUSSION

The court has found that the Estate is entitled to recovery under the Allstate and Progressive Policies in the amount of $200,000. In the instant motion, Progressive seeks judgment on its proposed declaration that it is obligated to contribute only a one-third share of that recovery or $66,666,66. In response, Allstate contends that Progressive owes a one-half proportionate share.[2] For the reasons discussed below, the court finds that Progressive is obligated to pay a one-half share of the total recovery and accordingly denies the motion.

Where "there is other appliable [UIM] coverage," the Progressive Policy limits its UIM coverage to the proportion that Progressive's "limit of liability bears to the total of all available coverage limits." ECF No. 1-1 at 21. There is no dispute that Progressive's "limit of liability" under the Progressive Policy is $200,000. The only question for the court, then, is the proportion that the $200,000 limit bears to "all available coverage limits." Id. In the May 19 Order, the court explained:

> . . . South Carolina law limits the Estate's recovery under the Allstate and Progressive Policies. The accident did not involve a vehicle covered under the Allstate or Progressive Policies. See Answer ¶ 9, 14–15. Accordingly, "coverage is available only to the extent of coverage on any one of the vehicles with the excess or underinsured coverage." S.C. Code Ann. § 38-77-160. In other words, § 38-77-160 limits the Estate's recovery to the

---

[2] At the outset of the dispute, Progressive and Allstate each paid a one-half share to the Estate with Progressive reserving its right to challenge the validity of its proportionate share. Accordingly, Progressive seeks reimbursement from Allstate in the amount of $33,333.33, the difference between a one-half and one-third share of the Estate's total recovery.

>single highest limit of UIM coverage available under the relevant coverages. There is no dispute here that the Estate is attempting to recover $400,000 in total, and each policy clearly limits UIM coverage to $200,000. And there is likewise no dispute that Progressive and Allstate have each paid out $100,000 under their respective policies, meaning that the Estate has recovered a total of $200,000, consistent with the limits of each policy. Accordingly, the court agrees with Progressive and Allstate that Ladue has received the full amount to which the law and the Progressive and Allstate Policies entitle him.

ECF No. 32 at 6–7. To be clear, the Estate is entitled to recover an amount equal to the UIM limits available under either the Allstate Policy or the Progressive Policy, each of which sets the same UIM coverage limit of $200,000. In other words, the amount of "available" UIM coverage is $200,000 under either policy—South Carolina law prevents the Estate from "stacking" coverages to recover from both. Therefore, both Allstate and Progressive bear any equal exposure to pay UIM benefits, meaning that Progressive's UIM coverage liability bears a one-to-one proportion with Allstate's UIM coverage liability. Accordingly, Progressive is obligated to pay a one-half share.

Progressive contends that it is only obligated to pay a one-third share of the Estate's recovery because the Allstate Policy insures two vehicles while its policy insures only one. But the issue here is not the number of vehicles insured; the clear language of the Progressive Policy states that Progressive's share will be determined according to the "available coverage limits." ECF No. 1-1 at 21. As the court has explained, although the Estate has multiple applicable UIM coverages by way of multiple covered vehicles, the Estate cannot "stack" those distinct coverages, meaning that the amount of UIM coverage "available" to the Estate is the single highest limit of UIM coverage applicable to any one vehicle. That the Allstate Policy covers two vehicles and the Progressive Policy covers one does not change the UIM coverage "available" to the Estate under South Carolina

7

law. Regardless of the number of vehicles their policies insure, Progressive and Allstate both bear a $200,000 UIM coverage exposure. Progressive cannot earnestly contend that the Estate cannot stack coverages for the purpose of determining the Estate's recovery, while simultaneously contending that it may stack the same coverages for the purpose of determining the share of the Estate's recovery it is obligated to pay. What's good for the goose is good for the gander. If the Estate is prohibited from stacking coverages for the purpose of its recovery, so too is Progressive in determining the share it is obligated to pay.

## IV.   CONCLUSION

For the foregoing reasons the court **DENIES** the motion.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**September 2, 2021**
**Charleston, South Carolina**